## ORRILL, CORDELL, & BEARY, L.L.C.

R. RAY ORRILL, JR.[1]
LESLIE A. CORDELL
W. CHRISTOPHER BEARY[2]
JEFFREY L. OAKES[3]

[1]BOARD CERTIFIED CIVIL TRIAL ADVOCATE
BY THE NATIONAL BOARD OF TRIAL ADVOCACY

[2]ALSO CERTIFIED PUBLIC ACCOUNTANT,
INACTIVE STATUS

[3]ALSO LICENSED IN NORTH CAROLINA

ATTORNEYS AT LAW
330 CARONDELET ST.
NEW ORLEANS, LOUISIANA 70130

(504) 299-8724
FAX: (504) 299-8735
TOLL FREE: (866) 832-2417
WWW.OCBLAW.COM

ANGEL L. BYRUM
ALEX L.M. DUCROS

January 16, 2013

**Certified Mail Return Receipt Requested**
**No. 70101870000267703076**

**THROUGH LOUISIANA LONG ARM STATUTE**
**WILLIAM CARMODY, ESQ.**
201 North Church Street, Suite 200
Greensboro, NC 27401

RE: *F. Gerald Maples, P.A. v. Stephen R. Donziger, Esq. and William Carmody, Esq.*
Civil District Court, Parish of Orleans
Docket Number 2013-0385, Division "C"

Dear Mr. Carmody:

Enclosed please find a certified copy of the Petition for Damages which was originally filed on January 14, 2013. This Petition is being served on you pursuant to the Long-Arm Statute, LA-R.S. 13:3204. Please be advised that a response to the Petition must be filed within fifteen (15) days from the date of service.

Sincerely,

Bobby Ray T. Malbrough

BRM/jls
Enclosure

**EXHIBIT**
**A**

ATTORNEY'S NAME: Beary, William  22253
AND ADDRESS:      330 CARONDELET ST.
                  New Orleans    LA 70130

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO:   2013 — 00385      2       DIVISION: C                SECTION: 10

F. GERALD MAPLES, P.A. VERSUS DONZIGER, STEPHEN R. ESQ.   ET AL

## CITATION

TO: CARMODY, WILLIAM ESQ.
    THROUGH: THE LOUISIANA LONG ARM STATUTE
    201 NORTH CHURCH STREET, SUITE 200

    GREENSBORO                  NC   27401

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
  FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

### ADDITIONAL INFORMATION
Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561- 8828. This Referral Service operates in conjunction with the
New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.
*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA**    January 14, 2013     .

Clerk's Office, Room 402, Civil Courts            DALE N. ATKINS, Clerk of
421 Loyola Avenue                                 The Civil District Court
New Orleans, LA                                   for the Parish of Orleans
                                                  State of LA
                                                  by
                                                       Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ | On this _____ day of _____ |
| _____ served a copy of the w/i petition | _____ served a copy of the w/i petition |
| FOR DAMAGES | FOR DAMAGES |
| On | On |
|   CARMODY, WILLIAM ESQ. |   CARMODY, WILLIAM ESQ. |
| THROUGH: THE LOUISIANA LONG ARM STATUTE | THROUGH: THE LOUISIANA LONG ARM STATUTE |
| | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ |
| Returned same day | a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said _____ |
| _____ No. | CARMODY, WILLIAM ESQ. |
| Deputy Sheriff of _____ | |
| Mileage: $_____ | |
| _____/ ENTERED /_____ | being absent from the domicile at time of said service. |
| PAPER              RETURN | Returned same day |
| _____/_____/_____ | _____ No. |
| SERIAL NO.   DEPUTY   PARISH | Deputy Sheriff of _____ |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2013-385                                          SECTION:

F. GERALD MAPLES, P.A.

Versus

STEPHEN R. DONZIGER, ESQ., and WILLIAM CARMODY, ESQ.

FILED: _____

                                              _____
                                              DEPUTY CLERK

## PETITION FOR DAMAGES

NOW INTO COURT, through the undersigned counsel comes Plaintiff, F. Gerald
Maples, P.A., ("Maples") a Professional Association with its principal place of business located
in the Parish of Orleans, State of Louisiana, and respectfully submits that defendants are justly
and truly indebted unto it for damages as are reasonable in the premises.

## THE PARTIES

### I.

Plaintiff, Maples, is a Professional Association with its principal offices located in New
Orleans, Louisiana, and F. Gerald Maples is a person of the full age of majority.

### II.

Made defendant herein is Stephen Donziger, Esq. ("Donziger") a person of the full age of
majority and resident of the state of New York.

### III.

Further made defendant herein is William Carmody, Esq. ("Carmody") a person of the
full age of majority and resident of the state of North Carolina.

## VENUE

### IV.

Venue is proper in the Parish of Orleans pursuant to La. Code Civil Procedure article
76.1.

## FACTS

### V.

Donziger and two representatives of the indigenous people of the Ecuadorian rainforest
travelled to New Orleans the first week of July, 2010, and met with Maples to discuss the

1

participation of Maples on behalf of plaintiffs in the matter entitled *Maria Aguinda v. Chevron Corporation*, number 002-2003, Provincial Court of Justice of Sucumbios, Ecuador.  The suit also involved a number of actions filed pursuant to 28 U.S.C. § 1782 by Chevron and Chevron attorneys from the firm of Gibson, Dunn in various United States District Courts against various plaintiff advisors and several former and current attorneys, including Donziger.

## VI.

At the meeting in New Orleans the first week of July, 2010, Donziger represented that he and Fajardo-Mendoza, were "Plaintiffs' U.S. Representative," and "lead counsel for and Ecuadorian legal representatives of the Plaintiffs" and they solicited Maples to provide "...additional legal services to pursue and defend, as the case may be, the Litigation to its conclusion, which may take several months or up to many years or may not be successful...."[1]

## VII.

At the July, 2010 meeting, Donziger explained that his co-counsel agreements were divided into two equal parts, with one half of the contingent fee recovery assigned to each part. The one side was devoted to investment for purposes of pursing the claims against Chevron in Ecuador, defending against the section 1782 efforts in the United States being pursued by Gibson, Dunn, paying Donziger's overhead and living expenses, and the other side was devoted to the litigation of the case.  Maples declined to participate in the investment side of the case but agreed to participate in the litigation side.  Defendants specifically requested that Plaintiff immediately enroll in the Chevron case instituted against Donziger in the United States District Court, Southern District of New York.

## VIII.

An authority to represent was to be executed by the representatives of plaintiffs in Ecuador, and a detailed contingency fee contract was forwarded to Maples in New Orleans from Carmody, where it was executed by Maples in New Orleans and returned to Carmody.  It was further represented to Maples that the contingency fee contract was executed by Plaintiffs in Ecuador.

## IX.

Maples was requested to immediately begin work on the design of litigation strategy to counter and defend the efforts of Chevron and the firm of Gibson, Dunn that was active and

---

[1] Exhibit 1, Retainer Agreement.

pending in the United States District Court, Southern District of New York..  Donziger and
Maples agreed to the terms of the contingency fee agreement referenced above on the promise by
Donziger that an authorization of representation signed by the indigenous rainforest plaintiffs
would be forthcoming.

X.

Maples executed the contingency fee contract he received from Carmody and
immediately returned it to Carmody, as instructed, and continued to work on the litigation
strategy and participated in court filings, court appearances, depositions, and meetings in New
Orleans, New York, Washington, San Francisco and London, England.  Donziger even spent
time with Maples' staff in New Orleans to inform them of the history of the 18 year litigation
against Chevron, as well as the challenges faced in various jurisdictions in the United States.
Maples advanced all expenses it incurred in the litigation from July, 2010 until termination in
late 2011.[2]

XI.

Between July, 2010 and October, 2011, Maples was requested to become involved in the
litigation in the United States District Court, Southern District of New York by Jim Tyrell, Chief
of Litigation with the Patton, Boggs Law Firm, which firm is also assisting Donziger in attempts
to collect the $18 billion judgment against Chevron.[3]

COUNT 1: BREACH OF CONTRACT

XII.

All of the foregoing paragraphs are incorporated by reference as if pleaded herein *in
extenso.*

XIII.

Maples contends that defendants, Donziger and Carmody personally breached the
retainer agreement executed by Maples in New Orleans in July, 2010, in and among other ways
by failing to honor the agreement as written and by failing to provide Maples with compensation

---

[2] Although discharged, Maples still remains involved in the New York litigation due to the rules of court and
remains responsible for everything that happens in that court insofar as the representations of the Ecuadorian
defendants. The filings that take place in that case occur virtually daily and the review process is time-consuming.
The docket sheet alone in the New York case is approximately 150 pages.
[3] Chevron's suit against Donziger pending in the United States District Court, Southern District of New York, No.
1:11-cv00691-LAK, which case in general alleges that the judicial system in Ecuador is corrupt, that Donziger
utilized the corruption of the system, and that Chevron was denied due process.  Thus, the judgment is
unenforceable anywhere in the world.

3

for services in the amount of 10% of the total contingency fee payment, which amount is equal to 20% of all plaintiff collections.

## XIV.

Maples further contends that Donziger and Carmody have failed to reimburse Maples for out-of-pocket expenses incurred in prosecuting the litigation as requested and agreed to under the terms of the Retainer Agreement executed in New Orleans in July, 2010.

## XV.

Maples further contends that defendants Donziger and Carmody breached the Retainer Agreement without cause or justification on October 31, 2011, notwithstanding that Maples had expended over a year of time, effort, costs and expenses on behalf of the Ecuadorian plaintiffs represented by Carmody, as well as same on behalf of Donziger, personally.

## XVI.

As a result of all breaches of the Retainer Agreement, Maples sustained and continues to sustain damages as are reasonable in the premises for which it seeks recovery.

## COUNT 2: DETRIMENTAL RELIANCE

## XVII.

All of the foregoing paragraphs are incorporated herein as if pleaded herein *in extenso*.

## XVIII.

In the alternative, in the event there is no breach of contract claim found to exist against Donziger and Carmody, Plaintiff alleges the doctrine of detrimental reliance based on Donziger and Carmody's promises and inducements in the following particulars:

## XIX.

Donziger and Carmody through their promises, agreements, conduct, meetings, inducements, solicitation of Plaintiff and acquiescence in Maple's work and activities in the cases on several fronts, including in the United States District Court, Southern District of New York, induced Plaintiff to rely on such actions which proved to be to his detriment when defendants changed their position relative to the Retainer Agreement, after Plaintiff expended great time, money and effort in various venues across the United States, and in London, England. As a result of Plaintiff's reliance to his detriment on Donziger and Carmody's promises, actions, inducements acquiescence, and further as a result of defendants' sudden, unjustified and unilateral action contrary to their prior acts, admissions, promises and representations, Plaintiff

4

has been and is being denied his interest, without cause, while Donziger and Carmody have and continue to benefit and be enriched due solely to the efforts of Plaintiff.

## XX.

As a result of the foregoing, Plaintiff sustained and continues to sustain damages in the premises for which it seeks recovery, and for which Donziger and Carmody must make restitution or recompense.

## COUNT 3: UNJUST ENRICHMENT

## XXI.

All of the foregoing paragraphs are incorporated herein as if pleaded *in extenso*.

## XXII.

In the alternative, in the event there is no breach of contract found to exist against defendants, Plaintiff alleges the doctrine of unjust enrichment by Donziger and Carmody in the following particulars.

## XXIII.

Donziger and Carmody were and continue to be enriched by the efforts of Plaintiff; Plaintiff was and is continually being impoverished by the sudden, unjustified and unilateral attempted termination of the Retainer Agreement; further, Plaintiff is unable, due to rules of the court, to withdraw as counsel of record in the United States District Court, Southern District of New York, where pleadings are still being filed almost daily and where Donzier, Carmody and Fajardo-Mendoza sought Plaintiff's immediate and primary attention; Plaintiff is being denied his percentage of the proceeds as outlined in the Retainer Agreement; and, Plaintiff is being denied its interest without cause while Donziger and Carmody have been and continue to be enriched from Plaintiff's reliance to his detriment.

## XXIV.

As a result of the foregoing, Plaintiff sustained and continues to sustain damages in the premises for which they seek recovery, and for which Donziger and/or Carmody must make restitution or recompense.

## REQUEST FOR JURY TRIAL

## XXV.

Plaintiff requests a jury trial on all issues and counts herein.

## XXVI.

**WHEREFORE,** Plaintiff prays that after all due proceedings had, including trial by jury, there be judgment rendered in its favor and against Defendants, jointly and in severally, for all amount owed, with interest from the date of the execution of the Retainer Agreement until paid in full, and attorney fees and costs, as well as all costs of this proceeding, and for any other general and equitable relief in the premises.

Respectfully submitted,

R. Ray Orrill, Jr. (LSBA # 10239)
W. Christopher Beary (LSBA # 22253)
**Orrill, Cordell & Beary**
330 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 299-8724
Facsimile: (504) 299-8735
Email: rrojr@ocblaw.com
 wcb@ocblaw.com

*Co-counsel for Plaintiff, F. Gerald Maples, P.A.*

Bobby Ray T. Malbrough (LSBA #09009)
330 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 299-8724
Facsimile: (504) 299-8735
Email: brm@ocblaw.com

*Co-counsel for Plaintiff, F. Gerald Maples, P.A.*

**SHERIFF, PLEASE SERVE**
**VIA LOUISIANA LONG ARM STATUTE**

STEPHEN R. DONZIGER
245 W. 104TH St., #7D
New York, New York 10025

WILLIAM R. CARMODY
201 North Church Street, Suite 200
Greensboro, North Carolina 27401

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

## RETAINER AGREEMENT

THIS RETAINER AGREEMENT (as from time to time may be amended in accordance with the terms hereof, this "Agreement"), dated as of February __, 2011, is made between and among (i) each of the individual plaintiffs in the matter *Maria Aguinda y Otros v. Chevron Corporation* (as listed on the attached Exhibit A, and together with their respective successors and assigns, the "Plaintiffs"), by Pablo Estenio Fajardo Mendoza, Esq., in his capacity as lead counsel for and Ecuadorian legal representative of the Plaintiffs, (ii) EL FRENTE DE DEFENSA DE LA AMAZONIA (as listed on the attached Exhibit A, and together with its successors and assigns, the "Amazon Defense Front"), duly represented by Ermel Gabriel Chávez Parra, who is authorized by the Board of Directors and as beneficiary of any judicial or settlement award granted to the Plaintiffs, (iii) ASAMBLEA DE AFECTADOS POR TEXACO (as listed on the attached Exhibit A, and together with its successors and assigns, the "Assembly of Communities Affected by Texaco" and, collectively with the Amazon Defense Front, the "Plaintiffs' Coordinators") by Luis Yanza under that certain Special Power of Attorney dated March 1, 2010 (the "POA") granted by Ermel Gabriel Chávez Parra, Ernesto Germán Maniguaje Piaguaje, Ángel Justino Piaguage Lucitante, Toribio Aguinda Lucitante and Pedro Bienvenido Galarza Bravo, and (iv) F. GERALD MAPLES, P.A., a _____, having offices at c/o Canal Place, 365 Canal Street, Suite 2650, New Orleans , LA 70130 (collectively, the "Firm").

### WITNESSETH:

WHEREAS, the case *Maria Aguinda y Otros v. Chevron Corporation* [No. 002-2003] is pending in the Provincial Court of Justice of Sucumbios, Ecuador to recover clean-up costs and other damages and relief from defendant Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron) for Texaco's role as drilling operator in Ecuador and/or consortium partner; and

WHEREAS, a number of actions pursuant to 28 U.S.C. § 1782 have been filed by Chevron and Chevron lawyers Rodrigo Perez Pallares and Ricardo Reis Veiga in various United States District Courts against various of the Plaintiffs' advisors, including several of their former and current lawyers; and

WHEREAS, additional related litigation and associated activities are occurring and anticipated, including, without limitation, initiating actions pursuant to 28 U.S.C. § 1782 and as necessary to enforce a judgment against Chevron or its subsidiaries in Ecuador, the United States and/or other countries and pursue or defend any appeals therefrom and conducting possible settlement negotiations with Chevron and its representatives (all of the above, collectively, the "Litigation"); and

WHEREAS, the Plaintiffs are currently represented by Pablo Fajardo Mendoza, Esq., Steven R. Donziger, Esq. (the "Plaintiffs' U.S. Representative") (the foregoing, collectively with any successors thereto, the "Plaintiffs' Representatives"), and other lawyers and law firms; and

WHEREAS, the Plaintiffs and the Plaintiffs' Coordinators seek additional legal services to pursue and defend, as the case may be, the Litigation to its conclusion, which may take several



months or up to many years or may not be successful; and

WHEREAS, the parties desire to enter into this Agreement after careful and extended consideration on terms that each party considers commercially reasonable (taking into account, among other things, all relevant facts and circumstances related to the Litigation).

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties, intending to be legally bound, hereby agree as follows:

(1) Scope of Representation.

The Plaintiffs and the Plaintiffs' Coordinators hereby engage the services of the Firm to serve as legal counsel to the Plaintiffs and the Plaintiffs' Coordinators in connection with the Litigation. At the request of the Plaintiffs or the Plaintiffs' Coordinators, the Firm shall also represent any third party who requires legal counsel in connection with their activities on behalf of the Plaintiffs and/or the Plaintiffs' Coordinators in the Litigation; provided, that such third party agrees to such representation and such representation does not cause the Firm to have a material conflict of interest. The Firm shall cooperate and coordinate their efforts as requested by the Plaintiffs or the Plaintiffs' Coordinators, as the case may be, with any other lawyers or law firms retained by the Plaintiffs and/or the Plaintiffs' Coordinators in connection with the Litigation. Notwithstanding the foregoing, the Firm shall not have the power or authority to enter into contracts, discussions or negotiations with Ecuadoran civil servants, delegates or any person associated with or representing Chevron or any other defendant without the prior written authorization or instruction of the Plaintiffs and the Plaintiffs' Coordinators (which may be given by the Plaintiffs' Representative in Ecuador).

(2) Devotion of Resources.

The Firm agrees to zealously represent the Plaintiffs and the Plaintiffs' Coordinators in connection with the Litigation, and to commit substantial resources to the Litigation as may be required in order to zealously prosecute and defend the Litigation (whether foreseen or unforeseen). Set forth on the attached Exhibit B are the names of the individual lawyers of the Firm who will be in charge of various aspects of the Firm's representation of the Plaintiffs and the Plaintiffs' Coordinators, and who shall dedicate substantial time and effort on the Litigation. In the event that any of the individual lawyers listed on the attached Exhibit B cease to carry out the function contemplated therein or elsewhere in this Agreement, the Firm shall immediately replace such individual lawyer with another lawyer of equivalent seniority and experience and promptly send written notice of such replacement to the Plaintiffs' U.S. Representative. The Firm agrees to assign additional attorneys (at the partner, counsel and associate levels) to the Litigation to the extent required to respond to the circumstances of the Litigation, and to respond in good faith to requests by the Plaintiffs' U.S. Representative to assign additional legal resources to the Litigation.

(3) Compensation.

(a) Contingency Fee. As compensation for its services hereunder, the Firm

2

shall be entitled to ten percent (10%) of the Total Contingency Fee Payment (the "Active Lawyer Percentage"), and to no other compensation or payment. The "Total Contingency Fee Payment" means an amount equal to twenty percent (20%) of all Plaintiff Collection Monies. "Plaintiff Collection Monies" means any amounts paid, whether in lump sum or installments, from Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron), any other party listed as a defendant in respect of the Litigation (including, without limitation, his or its respective affiliates and successors in interest) or any other party added or joined to the Litigation from time to time as a defendant or indemnitor or against whom proceedings are asserted or threatened. Funds are considered "paid" when the monies are disbursed to the Plaintiffs or are available to be so disbursed. For the avoidance of doubt, the Plaintiff Collection Monies shall be reduced for taxes and similar assessments required to be paid in the United States or Ecuador but not the application of the 100/10 Law. If it is determined that the 100/10 Law prevents the Plaintiffs from paying the entire amount of their contingency fee obligations from the Plaintiff Collection Monies, the term "Total Contingency Fee Payment" means an amount equal to one hundred percent (100%) of all portions of the Plaintiff Collection Monies that may be paid by the Plaintiffs in satisfaction of their contingency fee obligations. The "100/10 Law" means Article 43 of Ecuador's Environmental Management Act, Law No. 37, RO/245 of July 30, 1999.

   (b)  The Firm hereby acknowledges and agrees as follows:

     (i)  If, from time to time, the Plaintiffs and the Plaintiffs' Coordinators reasonably determine that (A) one or more additional lawyers and/or law firms should be retained by the Plaintiffs and/or the Plaintiffs' Coordinators in order to assist with the pursuit or defense of the Litigation ("Additional Lawyers") and/or (B) there are insufficient funds currently available to the Plaintiffs and/or the Plaintiffs' Coordinators to pay the reasonably anticipated costs and expenses of the Litigation as shown on the then current budget for the Litigation and, as a result, the Plaintiffs and/or the Plaintiffs' Coordinators should seek additional funding for the Litigation from one or more additional funders ("Additional Funders"), then the Plaintiffs and/or the Plaintiffs' Coordinators, as the case may be, shall deliver notice of that fact to the chairman of the management committee (to be discussed in the Master Agreement (defined below)) (the "Chairman") and the Plaintiffs' U.S. Representative setting forth such determination and requesting that the Chairman and the Plaintiffs' U.S. Representative agree to reduce the Active Lawyer Percentages of each lawyer engaged by the Plaintiffs and/or the Plaintiffs' Coordinators on a contingency fee basis in respect of the Litigation (each, an "Active Lawyer") on a pro rata basis (based upon their then existing Active Lawyer Percentages under each Active Lawyer's respective retainer agreement with the Plaintiffs and/or the Plaintiffs' Coordinators) in order to allow for the Plaintiffs and/or the Plaintiffs' Coordinators to engage such Additional Lawyers or enter into a funding arrangement with such Additional Funders, as applicable (such notice, a "Request Notice"). Each Request Notice shall describe the proposed economic terms and conditions for any agreement with Additional Lawyers and/or Additional Funders, including, without limitation, as applicable, the Active Lawyer Percentage proposed to be allocated to any Additional Lawyers (the "Additional Lawyer Percentage") and the percentage of Plaintiff Collection Monies proposed to be paid to any Additional Funder (the "Additional Funder Percentage"). Immediately upon receipt of any Request Notice, the Chairman and the

3

Plaintiffs' U.S. Representative shall deliver a copy thereof to the Firm and each other Active Lawyer, for notification purposes only.

(ii)    No later than 10 days after the delivery of a Request Notice by the Plaintiffs and/or the Plaintiffs' Coordinators, the Chairman and the Plaintiffs' U.S. Representative shall discuss and decide jointly to either approve or reject the requested actions set forth in such Request Notice. If both the Chairman and the Plaintiffs' U.S. Representative agree to approve the requested actions set forth in such Request Notice, then the requested actions set forth in such Request Notice shall be deemed approved, and the Plaintiffs and/or the Plaintiffs' Coordinators, as the case may be, thereafter may engage the Additional Lawyers or enter into a funding agreement with Additional Funders, as applicable, upon economic terms no more favorable to the Additional Lawyers or Additional Funders, as applicable, than as set forth in the approved Request Notice.

(iii)    Immediately upon the engagement of any Additional Lawyers or the entry into a funding agreement with any Additional Funders which, in each case, has been approved in accordance with this Section 3(b), the Active Lawyer Percentage of the Firm shall be reduced by its pro rata share (based upon their then existing Active Lawyer Percentage) of the amount required to enable the Plaintiffs and/or the Plaintiffs' Coordinators to grant, as applicable, (a) the Additional Lawyer Percentage to such Additional Lawyer or (b) the Additional Funder Percentage to such Additional Funder, in each case, taking into account any reductions made to the portion of the Plaintiff Collection Monies which are or may be paid to any non-lawyer advisors to the Plaintiffs and/or the Plaintiffs' Coordinators in accordance with the terms of the agreement then in place between the Plaintiffs and/or the Plaintiffs' Coordinators and such non-lawyer advisor. For avoidance of doubt, no Active Lawyer shall bear any more or any less than its pro rata share of the reductions referred to in this Section 3(b).

(c)    For the avoidance of doubt, except as expressly set forth in Section 3(a) above, the Firm shall not be entitled to any payment or reimbursement of any fees, costs or expenses of any kind or nature incurred or accrued by or on behalf of the Firm by virtue of its representation of the Plaintiffs, the Plaintiffs' Coordinators or any other Person as set forth in this Agreement.

(4)    Reporting Obligations.

The Firm shall provide timely updates to the Plaintiffs' Representatives on the status of their legal efforts on behalf of the Plaintiffs and the Plaintiffs' Coordinators, and shall promptly respond to any reasonable request for information received from a Plaintiffs' Representative.

(5)    Other Attorneys: Intercreditor Agreement.

(a)    The Plaintiffs and the Plaintiffs' Coordinators have entered into, and expect to enter into, agreements with other attorneys to work on the Litigation. These agreements are expected to differ from this Agreement in various ways. For example, some of

4

those attorneys will be compensated through a combination of hourly or monthly fees (with various degrees of discount or no discount) and contingent fee payments, or exclusively on a contingent basis. Other attorneys may be retained to work without any contingent fees. Any attorneys who the Plaintiffs and/or the Plaintiffs' Coordinators agree to compensate, in whole or part, on a contingent basis shall be required to become parties to a master agreement to be agreed to by all firms representing the Plaintiffs and/or the Plaintiffs' Coordinators on a contingency basis (the "Master Agreement"). The Firm shall execute the Master Agreement once the same is in final form.

          (b)     The Firm acknowledges and agrees that the terms of the engagement set forth in this Agreement (including, without limitation, the payment of the fee described in <u>Section 3(a)</u>) are subject to the priorities, terms and provisions set forth in the Intercreditor Agreement dated as of October 31, 2010 by and among the Plaintiffs, the Plaintiffs' Coordinators, certain parties providing funding for the Litigation, the Plaintiffs' and/or the Plaintiffs' Coordinators' lawyers and other advisors (the "Intercreditor Agreement"), a copy of which has previously been provided to the Firm. The Firm shall, as a condition to the engagement and to its right to the payment of the fee described in <u>Section 3(a)</u>, execute and deliver an accession letter to the Intercreditor Agreement pursuant to which the Firm shall each agree to be bound by the Intercreditor Agreement and comply with each of the terms thereof.

     (6)    <u>Confidentiality of Client Information</u>.

        The Firm shall not disclose any confidential information of the Plaintiffs or the Plaintiffs' Coordinators to any third parties, including other clients, unless (a) specifically authorized by the Plaintiffs, the Plaintiffs' Coordinators or the Plaintiffs' Representatives to do so, or (b) legally required to do so.

     (7)    <u>Client Files</u>.

        In the course of the representation of the Plaintiffs and the Plaintiffs' Coordinators, the Firm shall maintain and safeguard the Plaintiffs' and the Plaintiffs' Coordinators' files to the same extent and in the same manner as the Firm maintains its respective client files generally. The Plaintiffs' and the Plaintiffs' Coordinators' files shall consist of all correspondence, pleadings, deposition transcripts, exhibits, physical evidence, experts' reports, attorney work product and other items related to the Firm's representation of the Plaintiffs and/or the Plaintiffs' Coordinators. The Plaintiffs' and/or the Plaintiffs' Coordinators' files shall be and remain the property of the Plaintiffs and the Plaintiffs' Coordinators, as applicable. The Firm shall provide the Plaintiffs' Representatives with access to the Plaintiffs' and the Plaintiffs' Coordinators' files at such times as may be requested by the Plaintiffs' Representatives. The Firm shall dispose of the Plaintiffs' and the Plaintiffs' Coordinators' files seven years after the conclusion of the Litigation in accordance with the Firm's document retention policies.

     (8)    <u>Conflicts of Interest</u>.

        The Firm confirms that it has performed a conflicts check on the known parties in the Litigation and are unaware of any conflict (either waivable or non-waivable) that would prevent

or preclude the Firm's representation of the Plaintiffs and the Plaintiffs' Coordinators. Furthermore, the Firm represents that it has no preexisting attorney-client relationship with any party in the Litigation.

       (9)    <u>Arbitration of Disputes</u>.

       (a)    Any controversy or claim arising out of or relating to this Agreement, the relationship among the Plaintiffs' Representatives, the Plaintiffs, the Plaintiffs' Coordinators, other attorneys or advisors involved in the Litigation or any of their affiliates or successors (the "<u>Arbitration Parties</u>") and the Firm, their attorneys and staff or any of their successors (the "<u>Firm Arbitration Parties</u>") or the services provided by the Firm Arbitration Parties pursuant to this Agreement or otherwise shall be submitted to binding arbitration, in accordance with this <u>Section 9</u>, if the parties have been unable to resolve the dispute through negotiation, mediation or otherwise within thirty (30) days after one party has provided written notice of a dispute to the other party. The Firm shall send any such notice to each of the Plaintiffs' Representatives by registered overnight delivery service such as Federal Express or DHL at the last-known address of such persons in the Firm's records. By agreeing to arbitrate, the parties are agreeing to waive any right to a jury trial. The arbitration shall be conducted and administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules (the "<u>ICDR Rules</u>"), this Agreement and the Federal Arbitration Act. In the event of a conflict, the provisions of the ICDR Rules shall control, except where the ICDR Rules conflict with this Agreement, in which case this Agreement shall control. The arbitration shall be conducted before a panel of three arbitrators (all of whom shall be former state or federal judges, with at least five years judicial experience and each of whom shall be fluent speakers and readers of both Spanish and English), regardless of the size of the dispute, to be selected as provided in the ICDR Rules. The arbitration shall be commenced and held in Miami, Florida, unless otherwise required by a person or entity who or which has provided funding to the Plaintiffs and/or the Plaintiffs' Coordinators in respect of the Litigation. Any issue concerning the location of the arbitration, the extent to which any dispute is subject to arbitration, the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, and any discovery disputes, shall be resolved by all of the arbitrators. No potential arbitrator may serve on the panel unless he or she has agreed in writing to be bound by these procedures. To the extent state law is applicable, the arbitrators shall apply the substantive law of the State of New York. Each party shall, upon the written request of the other party, promptly provide the other with copies of all documents on which the producing party may rely in support of or in opposition to any claim or defense and a report of any expert whom the producing party may call as a witness in the arbitration hearing. At the request of a party, and upon the showing of good cause, the arbitrators shall have the discretion to order production by the other party or by a third party of other documents relevant to any claim or defense. Each party shall be entitled to depose a maximum of three witnesses (which number may not be increased by the arbitral tribunal), plus all experts designated to be witnesses at the arbitration. The depositions shall be held within thirty (30) days of the making of a request and shall be limited to a maximum of six hours per deposition. All objections are reserved for the arbitration hearing, except for objections based on privilege and proprietary or confidential information.

(b)    All aspects of the arbitration shall be treated as confidential and neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.   Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.  The result of the arbitration shall be binding on the parties and judgment on the arbitrators' award may be entered in any court having jurisdiction.  In no event shall the arbitrators have any authority to award punitive damages.

(c)    The parties acknowledge that the Plaintiffs and/or the Plaintiffs' Coordinators intend to enter into agreements with other attorneys on or after the date of this Agreement and that all such agreements will contain provisions obligating the parties thereto to submit any disputes to binding arbitration substantially similar to the provisions of this Section 9. In the event of any dispute between the Plaintiffs and/or the Plaintiffs' Coordinators and an attorney (whether active or inactive) or any other person or entity with a legitimate or alleged claim to Plaintiff Collection Monies (any such person, a "Claimant"), the Plaintiffs and the Plaintiffs' Coordinators desire to resolve such dispute in a single arbitration proceeding involving all such Claimants.  In view of the foregoing, in the event of an arbitration proceeding involving the Plaintiffs, the Plaintiffs' Coordinators and a Claimant, the Firm agrees to participate in such proceeding if it is joined by Plaintiffs, the Plaintiffs' Coordinators or any Claimant and agrees not to oppose joinder of other attorneys or Claimants if sought by Plaintiffs, the Plaintiffs' Coordinators or a Claimant who is a party to the arbitration proceedings. Furthermore, the Firm agrees that under no circumstances shall it demand, claim or seek to obtain a greater amount or increased percentage of Plaintiff Collection Monies than it has agreed to in this Agreement and hereby unconditionally and irrevocably waives any right to make such a demand or claim in any arbitral, judicial or other proceeding anywhere in the world.

(10)   Controlling Law.

This Agreement shall be governed by and construed and interpreted in accordance with the laws of New York without reference to principles of conflict of laws.

(11)   Privilege.

In the course of representing the Plaintiffs and the Plaintiffs' Coordinators, the parties understand that there will be a need for the Firm to communicate with the Plaintiffs' Representatives, the Plaintiffs, the Plaintiffs' Coordinators and other counsel retained by the Plaintiffs and/or the Plaintiffs' Coordinators.  The parties agree that all such communications are to be treated as confidential and protected to the maximum extent permitted under applicable law by the attorney/client, work product, joint prosecution, common interest, and all other applicable privileges and doctrines.

(12)   Modification in Writing.

No modification, amendment, waiver or release of any provisions of this Agreement or of any right, obligation, claim or course of action arising hereunder shall be valid or binding for any purpose unless in writing and duly executed by the party against whom same is asserted.

7

(13)   <u>Entire Agreement</u>.

This Agreement contains all the agreements between the parties hereto regarding the subject matter of this Agreement and all prior and contemporaneous agreements and understandings between the parties with respect to the subject matter hereof are deemed merged herein.

(14)   <u>Termination of Agreement</u>.

(a)   Either party may terminate this Agreement upon thirty (30) days notice in writing to the other party.  The provisions of <u>Sections 6, 7</u> and <u>9</u> through <u>18</u> (inclusive) shall survive the termination of this Agreement.  In the event that the Firm, the Plaintiffs, the Plaintiffs' Coordinators and others hereafter enter into a Master Agreement, then upon termination of this Agreement, the Firm shall no longer be a party to, or have any rights under, such Master Agreement (as determined by the arbitration process in <u>Section 9</u>); provided, that, if the Plaintiffs and/or the Plaintiffs' Coordinators terminate this Agreement prior to the recovery by the Plaintiffs of amounts otherwise payable to the Firm under the Master Agreement (if applicable), then in the event of a recovery by Plaintiffs of any amounts otherwise so payable, the parties will negotiate in good faith a payment to the Firm on an equitable basis taking into account all relevant circumstances.

(15)   <u>Confidentiality of Agreement</u>.

The parties hereby acknowledge and agree that the information contained in this Agreement is not known to the public, is confidential and proprietary, and is not to be disclosed by either party to any other person without the prior written approval of the other party except (a) to the extent necessary to comply with any applicable law, rule or regulation or the valid order of any governmental agency or any court of competent jurisdiction and (b) as necessary to enforce its rights under, and perform its agreements and obligations under, this Agreement.

(16)   <u>Severability</u>.

If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

(17)   <u>Assignment by Plaintiffs and/or the Plaintiffs' Coordinators</u>.

The Plaintiffs and the Plaintiffs' Coordinators may establish a trust for the purpose of,

8

among other things, more efficiently carrying out the Litigation (such trust, the "Litigation Trust"). In the event that the Litigation Trust is established, the Plaintiffs and the Plaintiffs' Coordinators have the right to and shall promptly (a) assign all of their respective rights and obligations under this Agreement to the Litigation Trust and (b) provide notice thereof to the Firm.

     (18)   Language.

    This Agreement has been drafted in English and translated into Spanish, and the parties hereto will execute both versions. In the event of a conflict between the English version of this Agreement and the Spanish translation thereof, the Spanish translation thereof shall control.

[remainder of page intentionally left blank]

9

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

PLAINTIFFS

On behalf of each of the plaintiffs in the matter *Maria Aguinda y Otros v. Chevron Corporation*

By: _____
Pablo Estenio Fajardo Mendoza, Esq., in his capacity as lead counsel for and Ecuadorian legal representative of the Plaintiffs

PLAINTIFFS COORDINATORS

El Frente de Defensa de la Amazonia

By: _____
Ermel Gabriel Chávez Parra, its President

On behalf of the Asamblea de Afectados por Texaco

By: _____
Luis Yanza, as Coordinator

FIRM

F. GERALD MAPLES, P.A.

By: _____
Name: F. Gerald Maples
Title: President, F. Gerald Maples, P.A.

10

EXHIBIT A

| | |
|---|---|
| Asamblea de Afectados por Texaco (Assembly of Communities Affected by Texaco) comprising the Frente de Defensa de la Amazonia; Organization of the Indigenous Nationality Siona of Ecuador (ONISE); the Organization of the Indigenous Nationality Secoya of Ecuador; the Indigenous Federation of the Cofan Nationality of Ecuador (FEINCE); Los Kichwas Firmantes de la Demanda; and Los Colonos Afectados<br><br>El Frente de Defensa de la Amazonia<br><br>Maria Victoria Aguinda Salazar;<br>Carlos Grega Huatatoca;<br>Catalina Antonia Aguinda Salazar;<br>Lidia Alexandra Aguinda Aguinda;<br>Patricio Alberto Chimbo Yumbo;<br>Clide Ramiro Aguinda Aguinda;<br>Luis Armando Chimbo Yumbo;<br>Beatriz Mercedes Grefa Tanguila;<br>Lucio Enrique Grefa Tanguila;<br>Patricio Wilson Aguinda Aguinda;<br>Celia Irene Viveros Cusangua;<br>Fransisco Matias Alvarado Yumbo;<br>Fransisco Alvardo Yumbo;<br>Olga Gloria Grefa Creda;<br>Lorenzo Jose Alvardo Yumbo;<br>Narcisa Aida Tanguila Narvaez;<br>Berta Antonia Yumbo Tanguila;<br>Gloria Lucrecia Tanquila Grefa;<br>Fransisco Victor Tanguila Grefa;<br>Rosa Teresa Chimbo Tanguila;<br>Jose Gabriel Revelo Llore; | Maria Clelia Reascos Revelo;<br>Maria Magdalena Rodriguez Barcenes;<br>Hugo Gerardo Camacho Naranjo;<br>Jose Miguel Ipiales Chicaiza;<br>Heleodoro Pataron Guaraca;<br>Luiza Delia Tanguila Narvaez;<br>Lourdes Beatriz Chimbo Tanguila;<br>Maria Hortencia Viveros Cusangua;<br>Segundo Angel Amanta Milan;<br>Octavio Ismael Cordova Huanca;<br>Elias Roberto Piyahuaje Payahuaje;<br>Javier Piaguaje Payaguaje;<br>Daniel Carlos Lusitande Yaiguaje;<br>Benacio Fredy Cimbo Grefa;<br>Guillermo Vincentepayaguaje Lusitante;<br>Delfin Leonidas Payaguaje Payaguaje;<br>Alfredo Donaldo Payaguaje Payaguaje;<br>Teodoro Gonzalo Piaguaje Payaguaje;<br>Miguel Mario Payaguaje Payaguaje;<br>Fermin Piaguaje Payaguaje;<br>Reinaldo Lusitande Yaiguaje;<br>Luis Agustin Payaguaje Piaguaje;<br>Emilio Martin Lusitande Yaiguaje;<br>Simon Lusitande Yaiguaje;<br>Armando Wilfrido Piaguaje Payaguaje; and<br>Angel Justino Piaguaje Lucitante. |

**EXHIBIT B**

Lawyers in Charge of Various Aspects of the
Representation of the Plaintiffs

[Firm to provide]