UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   JAN -6 2014
WILLIAM W. BLEVINS
CLERK

| | |
|---|---|
| F. GERALD MAPLES, P.A. | CIVIL ACTION |
| v. | NO. 2:13-cv-00223-JTM-SS |
| STEPHEN R. DONZIGER, ESQ. | JUDGE JANE TRICHE MILAZZO |
| | MAGISTRATE JUDGE SALLY SHUSHAN |

## MOTION TO SET ASIDE DEFAULT AND STAY PROCEEDINGS

I, Steven R. Donziger, respectfully request that the Court set aside the default entered against me on Dec. 2, 2013, for the following reasons: (1) as described in conference with the Court on Dec. 18, 2013, I was unable to make a timely response to Mr. Maples' amended complaint both because I did not receive it until the middle of December and because of the extraordinary burden on my schedule in recent months, including defending myself in a massive civil RICO action brought by the Chevron Corporation in the U.S. District Court for the Southern District of New York ("the RICO action") that was in trial from October 15 to November 26, 2013, and is still ongoing in a post-trial briefing phase; (2) Mr. Maples would not be prejudiced by setting aside the default judgment because it would merely require him to prove his case; and (3) I expect to present a meritorious defense on a renewed motion to dismiss the amended complaint or, if necessary, at trial. These reasons demonstrate good cause for the Court to set aside the default judgment.

I further request that the Court stay these proceedings until a final outcome is reached in the RICO action. As shown herein, the exclusive relief sought by Chevron in that action is an injunction explicitly barring me from "[u]ndertaking any acts to monetize or profit from the

judgment" in the underlying Ecuadorian environmental case ("the *Aguinda* case")—i.e. the judgment from the recovery of which Mr. Maples seeks (without any basis in law or fact) a percentage of my potential fee. *See* Declaration of Steven R. Donziger dated Dec. 31, 2013 ("Donziger Decl."), at Ex. A (Excerpts from Chevron Corporation's Post-Trial Memorandum of Law, 11 Civ. 0691 (LAK), Dkt. 1847 (S.D.N.Y, Dec. 23, 2013)).[1] If the New York court decides in favor of Chevron, as some independent observers of that process predict is likely, *see, e.g.*, Ex. B (Paul Barrett, *Ecuador Defends Challenged Pollution Verdict Against Chevron*, BloombergBusinessweek, Dec. 23, 2013), that outcome would effectively moot any relief Mr. Maples might seek in this action, as I would be legally barred from receiving any funds from which Mr. Maples might seek a percentage. In any event, a decision in the RICO action will invariably have an impact on the proper course of decision in this matter. Therefore, a stay of the instant matter pending a final resolution of the RICO action is warranted as a matter of practicality and judicial economy.

## FACTUAL BACKGROUND

As set forth in my earlier motion to dismiss, Dkt. 23-1,[2] which the Court granted at a hearing I was unable to attend on Oct. 9, 2013, Maples has used this action to pursue a windfall recovery of a significant percentage of the personal fee potentially due me for two decades of work on the aforementioned *Aguinda* case. Mr. Maples' bases this attempt on a draft retainer agreement (1) to which I am not a party; (2) that relates to work that Maples did not perform to the satisfaction of his purported clients and that he has consistently refused to document, despite numerous requests that he do so; (3) that provides for the possibility of termination of Mr.

---

[1] All exhibits referenced herein are to the Donziger Decl.
[2] *See also* Dkt. 14-1, Defendant William J. Carmody's Memorandum in Support of Motion to Dismiss, Jun. 18, 2013.

Maples by his purported clients, which Maples cannot dispute occurred in accordance with the agreement's terms; and (4) that in any event provides that any disputes shall be resolved in arbitration.

The Court appropriately dismissed Mr. Maples' original complaint on October 9. In response, he has attempted to salvage it by re-working it and re-filing it in even more legally baseless and objectionable form. Now Mr. Maples contends he is entitled to a significant percentage of my personal fee based on alleged "oral promises" by me of which Mr. Maples has not one shred of evidence (because there never were any such promises). *See* Dkt. 75 (Amended Complaint) at 5. To shore up his facially objectionable reliance on a breach of contract theory based on the draft retainer agreement, Mr. Maples now tosses in gratuitous and false allegations of "fraud," apparently based on a theory that I "reviewed and assisted in the drafting of" an email (by somebody else) that Mr. Maples dislikes. *Id.* at 8-9. Mr. Maples continues to seek recovery on an "unjust enrichment" theory despite the fact that, as shown in the exhibits to the amended complaint itself, he has refused numerous requests to provide any sort of an accounting for any alleged efforts he put into the *Aguinda* case—an accounting that would be the normal first step of any responsible effort by Mr. Maples to seek due compensation. *See, e.g.*, Dkt. 75-3 (Email from William Carmody to F. Gerald Maples dated Nov. 3, 2011, and attached as Ex. 3 to Maples' Amended Complaint) ("[T]he fact of the matter is that the Clients have now made at least three separate requests to you for the statement/description of hours worked by you and others within your firm on behalf of the Lago Agrio plaintiffs . . . . However, your email below indicates that you are now not willing to act in accordance with the Clients' reasonable requests and your prior statement."). The reality is that Mr. Maples has little or no interest in due

compensation because it would be minimal in light of his minimal contributions; rather he seeks an unjust windfall based on wholly invented, unsupported assertions of "oral promises."

While I would have liked nothing more than to provide these facts and my perspective to the Court in timely response to Mr. Maples' baseless amended complaint, I was unable to do so at the time because I did not actually receive the complaint until mid-December. Moreover, even if I had received the amended complaint, I would not have had the actual ability to deal with it at that time. I am a solo practitioner based in New York; I have no associates or paralegal assistance except for one part-time personal assistant. *See* Donziger Decl. at ¶ 2. As described in my letter of Dec. 16, 2013, I was in the middle of a seven-week civil RICO trial when the amended complaint was filed on October 29, 2013. The record in the RICO action contains nearly 2,000 docket entries and the trial involved thousands of exhibits (drawn from millions of documents produced in discovery) and thousands of pages of witness testimony. My counsel in the RICO action only entered the case a few weeks before trial and needed constant assistance from me to understand the 20 years' worth of background facts, as well as multiple novel legal issues and questions of foreign law. We were up against an army of literally hundreds, if not thousands, of lawyers on the other side, racking up fees and costs of at least $400 million *per year*. *See, e.g.*, Ex. D, Michael D. Goldhaber, *A Costly Battle*, The American Lawyer, May 1, 2013; *see also* Ex. B ("Represented by a hastily assembled squad of plaintiffs' lawyers, some of them working as volunteers, Donziger frequently found himself overwhelmed and outflanked in the New York trial."). Indeed, the RICO action is still ongoing in a post-trial briefing stage and I am currently in the process of trying to respond to a 393-page post-trial memorandum and 193 pages of proposed findings of fact and conclusions of law filed by Chevron on Dec. 23, 2013.

*See* Ex. A; Ex. C, Jennifer Smith, *Feliz Navidad! The Chevron vs. Donziger Docket Just Got Even Bigger*, The Wall Street Journal Law Blog, Dec. 24, 2013.

Even though Mr. Maples and his counsel were fully aware of my situation, and aware of the fact that I was not listed as an attorney of record in the case who would receive notifications of filings automatically through the ECF system, counsel failed to contact me at the time they filed the amended complaint by any of the means well-known to them and used by them in the past for contacting me, such as my personal email address and personal and office phone numbers. Instead, counsel purports to have served the amended complaint on the doorman at my apartment building in New York, but there is no mention of the doorman's name in the affidavit of service. In any event, I never received the amended complaint from any of the doormen in the apartment building where I reside. *See* Donziger Decl. at ¶ 1. It is extremely noteworthy that only *after* the Clerk entered default against me in this action—indeed, the very same day—counsel for Mr. Maples began emailing me courtesy copies of filings in the case to the email address used by me for RICO action matters and presumably known to counsel from its monitoring of that action. *Id.*

When I contacted opposing counsel to explain the situation and to seek a stipulation for setting aside the default and proceeding with the litigation in a way that would not inconvenience the Court, opposing counsel flatly the idea. *See* Ex. E (Email exchange dated Dec. 13, 2013). Opposing counsel confirmed that only *"[s]ince entry of the default*, we have sent you via email and regular mail copies of all pleadings we have filed in this matter," with no explanation as to why earlier filings were not so provided. *Id.* Counsel also asserted that "at all relevant times, your name, email address and home address have been on file with the CM/ECF system," a statement false as to my email address, which is *not* on file with the CM/ECF system, and

5

meaningless as to my name and home address, since their appearance on the electronic docket does not indicate I was receiving any filings. *Id.*

## ARGUMENT

### A. THE COURT SHOULD SET ASIDE THE DEFAULT BECAUSE DONZIGER NEVER RECEIVED THE COMPLAIN AND EXTENUATING CIRCUMSTANCES NEGATIVELY IMPACTED DONZIGER'S ABILITY TO RESPOND

Default judgments are disfavored and may be set aside by the Court for good cause. *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.2d 552, 563 (5th Cir. 2003); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir.1992) ("Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, 'even a slight abuse [of discretion] may justify reversal.'") (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)); *In re Chinese Mfd. Drywall Products Liab. Litig.*, 894 F. Supp. 2d. 819, 862 (E.D. La. 2012). *See also* Fed. R. Civ. P. 55(c). Three factors in particular are examined for determining "good cause": (1) whether failure to act was willful; (2) whether setting default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented. *Effjohn*, 346 F.2d at 563. The factors are not exclusive but are regarded as an appropriate means to identify good cause. *Id.*; *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default. That decision necessarily is informed by equitable principles.").

As explained above and attested to in the accompanying declaration, I never received the amended complaint. Donziger Decl. at ¶ 1. The affidavit of service fails to state the name of the

doorman on whom service was allegedly made. Moreover, my situation in November of this year, defending myself and working with new counsel in one of the largest and most aggressively litigated civil RICO actions in history, was such that I was simply unable to respond in a timely manner to Mr. Maples' amended complaint. My life—professional and personal—was completely occupied by the RICO action. I am a solo practitioner with no associates or other assistance available to monitor actions such as this one for filing activity. When I finally began receiving filings from opposing counsel indicating that a default had been entered, I was in the middle of post-trial briefing and, frankly, recuperating from the exhausting experience of the seven-week trial and the four months I spent without counsel leading up to it. I acted with diligence to (1) verify that a default had been entered against me; (2) contact opposing counsel to try to arrange a process to stipulate to setting aside the default and moving forward with the litigation without inconveniencing the Court; and when opposing counsel flatly rejected all entreaties, (3) drafting and sending my Dec. 16 letter to the Court explaining my situation. Under all these circumstances—and especially in light of the fact that opposing counsel's willful decision not to provide me with notice of the amended complaint by means it knew would reach me until after the Clerk entered default—the Court should find that my failure to answer was not willful as understood by the applicable case law and set aside the entry of default.

### B. THE COURT SHOULD SET ASIDE THE DEFAULT BECAUSE MAPLES WILL NOT BE PREJUDICED IF REQUIRED TO LITIGATE

Second, Mr. Maples will not be prejudiced if the default is set aside because it would merely require him to prove his case. There is no prejudice to the plaintiff when setting aside default requires plaintiff to litigate. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default") (citing *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996); *Riley v. Allstate Ins. Co.*, 166

F.R.D. 374, 376 (E.D. La. 1996) (setting aside default judgment for good cause and noting that plaintiff would not be prejudiced by being required to litigate). Mr. Maples has articulated no reason apart from having to litigate his case as to why he would suffer prejudice by this Court setting aside the default. Indeed, given that there has been no recovery on the *Aguinda* judgment and that the prospects of any such recovery in the near future are low, Mr. Maples cannot possible establish any reality of prejudice.

### C. THE COURT SHOULD SET ASIDE THE DEFAULT BECAUSE DONZIGER WILL PRESENT A MERITORIOUS DEFENSE AT TRIAL

Lastly, Mr. Donziger has a meritorious defense to present at trial. A defendant has a meritorious defense if the defendant's allegations contain even a hint of a suggestion which, proven at trial, would constitute a complete defense. *Robinson v. Griffith*, 108 F.R.D. 152, 155 (W.D. La. 1985). My defenses, many already articulated in my prevailing motion to dismiss the original complaint, go far beyond this. In due course I will provide competent evidence showing that the arguments made in my prior motion to dismiss apply to most of the amended complaint, and that the amended complaint's new theories, such as Mr. Maples' allegation of fraud based on entirely unsupported allegations of "oral promises" and pled with almost no particularity, fail even more resoundingly that his original theories. Indeed, opposing counsel's decision not to use known means to alert me to the amended complaint suggests an awareness by counsel of its infirmities.

### D. THE COURT SHOULD STAY THIS PROCEEDING

"There is no question that a district court has inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants, nor is there a question that this authority includes the district court's wide discretion to grant a

stay in a pending matter." *E. Cornell Malone Corp. v Sisters of the Holy Family, St. Mary's Academy of the Holy Family*, 922 F Supp. 2d 550, 563 (E.D. La. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) and citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). "When 'the interests of justice seem[ ] to require such action,' a court may exercise its discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions." *Id.* at 563-64 (citing *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970) and *Mayo v. Tri–Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986).

The interests of not only justice but judicial economy suggest the appropriateness of staying this action until a final outcome is reached in the RICO action. In the RICO action, the exclusive relief sought by Chevron is an injunction that would explicitly bar me from "[u]ndertaking any acts to monetize or profit from the judgment" in the *Aguinda* case or "[s]eeking or receiving any payment, compensation, or other benefit from the enforcement of the [*Aguinda*] Judgment." *See* Ex. A at pp. 340-41, 348-49. Thus, if the New York court decides in favor of Chevron, as observers of that process uniformly predict, *see, e.g.*, Ex. B ("Both Chevron and Donziger have said that based on his pretrial rulings and comments from the bench, Kaplan appears likely to decide in the company's favor."), that outcome would effectively moot any relief Mr. Maples might seek in this action, as I would be legally barred from receiving any funds from which Mr. Maples might seek a percentage. Despite any arguments he might make to the contrary, Mr. Maples cannot have a legitimate interest in litigating this case between now and the conclusion of the RICO action only to see any relief he might get here (however unlikely that is) rendered meaningless by disposition of that action. The reality is that the only conceivable interest of Mr. Maples in opposing any stay of this proceeding aligns with his continued efforts to impose unreasonable burdens on me at a time when I am struggling as a

solo practitioner with the heavy demands of the RICO action. This type of "interest" should not be countenanced by the Court. I am before the Court and eager to defend myself. The interests of justice will best be served by not requiring me to do so until certainty is reached with respect to the outcome of the pending RICO action, which could de dispositive as to the claims of Mr. Maples.

## PRAYER FOR RELIEF

The foregoing reasons, I respectfully request that the Court set aside the entry of default and stay this proceeding until a final resolution of the RICO action or such time as the Court deems appropriate.

Dated: Dec 31, 2013

Respectfully submitted,

s/ Steven R. Donziger
Steven R. Donziger
245 W. 104th Street, #7D
New York, NY 10025
Tel: (917) 678-3943
Fax: (212) 409-8628
Email: StevenRDonziger@gmail.com

*Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 31, 2013, I sent the foregoing document by overnight Federal Express to the Clerk's Office for the U.S. District Court for the Eastern District of Louisiana and provided identical copies to opposing counsel at the following email addresses known by me to be regularly used by them in this matter:

Bobby Malbrough <brm@ocblaw.com>
W. Christopher Beary <wcb@ocblaw.com>
Alex Ducros <ald@ocblaw.com>
ORRILL & BEARY, L.L.C.
330 Carondelet Street
New Orleans, LA  70130

*Attorneys for Plaintiff*

                                                          s/Steven R. Donziger
                                                          Steven R. Donziger